UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
Garth Marchant, Arlene Dacares,
Carolyn Younger Nolan, Larry L. Moore,
Anna Burrell, Jacqueline Davis, Tamara
Powell, Natasha Collins, Pamela Hazel,
Ollie Goins, Stephen S. Jones, Michael
Duvalle, Adrienne Richardson, Chauntae
Brown, Linval Wilson, David B. Kayode,
Earl A. Rose, Jacci A. Hurdle, Shadai
Mears, Sonya Simmons, Kewana Johnson,
Constantine Jean-Pierre, Bishop Frank
Best, and Thelma Davis,

                  Plaintiffs,

           -against-

New York City Board of Elections,
Juan Carlos Polanco – President,
Jose Miguel Araujo – Queens County
Democratic Commissioner, and

Steven Richman – General Counsel,


                Defendants.
--------------------------------------X

**MEMORANDUM & ORDER**

11-CV-4099 (KAM)

**MATSUMOTO, United States District Judge:**

        Plaintiffs Garth Marchant, Arlene Dacares, Carolyn

Younger Nolan, Larry L. Moore, Anna Burrell, Jacqueline Davis,

Tamara Powell, Natasha Collins, Pamela Hazel, Ollie Goins,

Stephen S. Jones, Michael Duvalle, Adrienne Richardson, Chauntae

Brown, Linval Wilson, David B. Kayode, Earl A. Rose, Jacci A.

Hurdle, Shadai Mears, Sonya Simmons, Kewana Johnson, Constantine

Jean-Pierre, Bishop Frank Best, and Thelma Davis (collectively,

"plaintiffs") commenced this action on August 23, 2011, by the
filing of a *pro se* complaint[1] with sworn affidavits from each
plaintiff and a motion by Order to Show Cause seeking injunctive
relief, directing that the New York City Board of Elections (the
"Board") and named defendants (collectively, "defendants") place
Everly D. Brown on the ballot for the public office of District
Attorney of Queens County in the Democratic Primary scheduled
approximately three weeks thereafter, on September 13, 2011
("the September 13 primary").[2]

Plaintiffs' complaint asserts jurisdiction pursuant to
42 U.S.C. §§ 1983, 1988, the First Amendment right to political
association, the Fourteenth Amendment right to due process and
equal protection of law, the Help Americans Vote Act ("HAVA," at

_____

[1] After the complaint was filed, Michael Mays, Esq., appeared at
the show cause hearing but had not yet filed a notice of
appearance for plaintiffs Larry Moore, Anna Burrell, Jacqueline
Davis, Tamara Powell, Natasha Collins, Chauntae Brown, David
Kayode, Earl Rose, Shadai Mears, Sonya Simmons, Kewana Johnson,
Constantine Jean-Pierre, Bishop Best, and Thelma Davis.
Mr. Mays ("plaintiffs' counsel") was ordered to file a notice of
appearance immediately but has not done so as of the date of
this Memorandum and Order.  On September 1, 2011, Mr. Mays left
a message that he "could not file a notice of appearance" but
did not explain his reasons.  The remaining plaintiffs continue
to represent themselves *pro se* in this action.

[2] The court notes that while plaintiffs style their requested
injunctive relief as restraint from *removing* Mr. Brown from the
ballot (the proposed Order to Show Cause requests that the Board
be "temporarily restrained and enjoined from removing Everly D.
Brown from the Ballot for the public office of District Attorney
[of] Queens County in the Democratic Primary, to be held on
September 13, 2011"), plaintiffs in fact request that the court
direct the Board to *add* Mr. Brown to the ballot, as the Board
has not yet added Mr. Brown to the ballot at issue.

42 U.S.C. § 15483(a)), and the National Voters Registration Act ("NVRA," at 42 U.S.C. § 1973gg-1, *et seq.*).[3] (Electronic Case Filing ("ECF") No. 1, Complaint ("Compl.") ¶¶ 2, 4.)

Judge Sandra Townes issued an Order to Show Cause on August 25, 2011 (ECF No. 5), ordering that plaintiffs serve the defendants with the Order to Show Cause and the supporting papers by 5:00 p.m. that same day; that defendants serve and file any response by August 29, 2011 at 12:00 p.m.; that plaintiffs serve and file any reply by August 30, 2011, at 12:00 p.m.; and that the parties appear before this court on August 30, 2011 at 3:00 p.m. for a show cause hearing as to why the injunctive relief sought by plaintiffs should not be granted. The hearing proceeded as scheduled, during which the court heard argument by the parties.

## BACKGROUND

Everly Brown, who is not a party to this action, sought to be a candidate in the September 13, 2011 Democratic Primary, for the office of District Attorney in Queens County. It is not clear on the record before this court whether Mr. Brown still seeks to be a candidate, although this court

---

[3] Plaintiffs' counsel, Mr. Mays, conceded during the show cause hearing that HAVA and NVRA--both of which apply to federal elections only--are inapplicable to the instant action, which involves a non-federal primary election.

acknowledges a pending appeal of the state court decision to dismiss his action.

New York Election Law requires that an individual who seeks to be placed on a party's primary ballot must submit a "designating petition" meeting the requirements set forth in Sections 6-130 to 6-136.  Designating petitions must bear the names, signatures, residential addresses, dates of signatures of registered voters, and a statement equivalent to an affidavit, signed by a witness who states under the "same penalties as if . . . duly sworn," that s/he is a qualified registered voter who witnessed the signature of each signatory who identified her/himself to be the individual who signed the petition on the date indicated.  N.Y. Elec. Law. §§ 6-130, 6-132.  For any office to be filled by all the voters of any county or borough within the City of New York--including the District Attorney-- the petition must contain the signatures of at least 4,000 then- enrolled voters of the party residing within the county or borough.  *Id.* at § 6-136(2)(b).

On July 14, 2011, a designating petition containing approximately 7,510 signatures was filed at the Board in support of placing Everly Brown on the ballot for the office of District Attorney for Queens County in the September 13 primary (the "Petition").  (Compl. ¶ 8; ECF No. 8, Declaration of Steven H. Richman ("Richman Decl."), ¶ 3.)  Citizen-Objectors Mary

4

Plunkett and Hersh K. Parekh submitted Specifications of
Objections setting forth line-by-line deficiencies of signatures
on the Petition.  (Richman Decl. ¶ 4.)  Their line-by-line
objections were based on the fact that the addresses on the
Petition--the witnesses' or signatories' current addresses--did
not match the addresses on record at the Board.  (Compl. ¶ 5.)

On July 28, 2011, the staff of the Board's General
Counsel prepared a "Counsel's Report" on the Specifications of
Objections filed regarding Mr. Brown's eligibility to be a
candidate for Queens County District Attorney, and a copy of
that report was faxed to Mr. Brown's designated contact person,
Garth Marchant, that day.  (Richman Decl. ¶ 5.)  On August 1,
2011, after reviewing the Citizen-Objectors' Specifications of
Objections, the Board staff issued a Clerk's Report stating that
the Petition had only 2,389 valid signatures.  (*Id.* ¶ 6.)  A
copy of that report was faxed to Mr. Marchant approximately 24
hours[4] before the Commissioners of the Board met to consider the
Report on August 2, 2011.  (*Id.* ¶ 7; Compl. ¶ 11.)  On August 2,
the Commissioners of the Board convened and determined that
Mr. Brown had an insufficient number of signatures, as only
2,389 of the 7,510 signatures in the Petition were valid;

---

[4] The parties disagree on the timing of the fax, as discussed
*infra*.

consequently, Mr. Brown was not placed on the ballot.  (Compl.
¶¶ 9-10; Richman Decl. ¶ 8.)

Mr. Brown, who is not a party to this action,
previously brought suit in New York State Supreme Court,
requesting validation of the Petition so his name could be added
to the ballot.  (Compl. ¶ 9; Richman Decl. ¶ 9.)  Mr. Brown's
complaint was heard, denied, and dismissed by Judge Flug on
August 9, 2011.  (Richman Decl. ¶ 10, Ex. B.)   The New York
Supreme Court Appellate Division, Second Division, will hear Mr.
Brown's appeal on September 6, 2011.  (*Id.* ¶ 11.)

Plaintiffs allege that the Board violated their rights
when it determined that the Petition lacked the sufficient
number of valid signatures due to the mismatched addresses;
after striking the signatures without valid addresses, the Board
found that the Petition had only 2,389 valid signatures, which
was short of the 4,000-signature requirement.  (Compl. ¶ 10.)
The plaintiffs now seek a mandatory injunction--one commanding
some positive act, as opposed to a prohibitory injunction--by
requesting that the court direct the Board to validate the
Petition and to place Mr. Brown's name on the Primary Election
ballot.  (ECF No. 2, Unsigned Order to Show Cause; Compl. at 9.[5])
Plaintiffs also request (1) that the court hold unconstitutional

---

[5] The court refers to the page number assigned by the ECF filing
system, because the pages of the complaint were not numbered.

various provisions of the New York Election Law;[6] (2) that the
court find defendants' actions in violation of NRVA and HAVA;
(3) that the court find the named individual defendants[7]
personally liable for their actions in denying the rights of
voters; (4) damages in the sum of $3,000,000 per plaintiff; and
(5) costs of this action.  (Compl. ¶ 9-10.)

---

[6] Plaintiffs advance four constitutional claims regarding various
provisions in the New York Election Law.  First, regarding the
4,000-signature requirement for addition of a candidate to the
ballot for the office of District Attorney in Queens County,
plaintiffs allege that because surrounding counties require only
2,000 signatures, the 4,000-signature requirement unfairly
burdens the residents of Queens County in violation of their
Equal Protection rights.  (Compl. at 7.)  Second, plaintiffs
challenge the constitutionality of the party-witness rule, which
counts as valid only signatures belonging to registered voters
who are members of the specific political party that a given
candidate represents.  (*Id.* at 8.)  Third, plaintiffs allege
that because the Board is comprised of ten commissioners--one
Democrat and one Republican from each of the five counties of
New York City--there are no representatives from other political
parties in New York City (such as the Green, Blank, and
Independent parties), and the lack of representation on the
Board for other parties is unconstitutional.  (*Id.*)  Fourth,
plaintiffs challenge the constitutionality of the requirement
that any inspector for the Board must be a Democrat or
Republican.  (*Id.*)  Because plaintiffs' counsel and *pro se*
plaintiff Mr. Marchant represented during the show cause hearing
that they were seeking the preliminary injunction without
reliance on these constitutional claims, the court does not
discuss them further here.
[7] Jose Miguel Araujo, Queens County Democratic Party
Commissioner; Juan Carlos Polanco, President of the Board; and
Steve Richman, General Counsel of the Board.

_The Show Cause Hearing_[8]

At the show cause hearing, _pro se_ plaintiff Marchant appeared, most of the represented plaintiffs appeared with counsel, and the Board of Elections appeared through counsel who asserted that the individually named defendants had no power over placement of Mr. Brown's name on the ballot for the September 13 primary. During the hearing, the court heard arguments from counsel representing the Board; Mr. Mays, who claimed to be counsel for a group of plaintiffs but has not complied with the court's order to file a notice of appearance; and Mr. Marchant, appearing _pro se_. All parties raised new arguments or submitted case law not previously submitted in the papers. The following is a non-exhaustive summary of the major issues discussed during the hearing.

Mr. Marchant asserted that the New York Election Law was amended last year to reduce by half the signature requirements for the offices of Borough President, District Attorney, and Civil Court Judge. As a result, he argued, the signature requirement is now 2,000--a requirement that the Petition meets. Defendants responded that the amendment affected only the New York City Charter, and specific offices. The court asked the parties for a citation to the law, as

---

[8] The transcript of the show cause hearing was not available as of the date of this Memorandum and Order.

allegedly amended, and neither party was able to produce it at
the hearing.[9]

      The court also heard arguments regarding defendants'
claim preclusion defense.  Defendants argued at the show cause
hearing and in their opposition memorandum (ECF No. 7,
Defendants' Memorandum of Law in Opposition to Plaintiffs'
Application for a Preliminary Injunction ("Defs. Opp'n")) that
to the extent the plaintiffs are in privity with Mr. Brown,
plaintiffs are bound by the state court's decision that the
Board did not err in declining to certify Mr. Brown, and are
therefore precluded from advancing their claim in federal court.
(Defs. Opp'n at 1.)  When the court asked plaintiffs' counsel
and Mr. Marchant whether evidence, including affidavits, had
been presented at the state court hearing to establish the
validity of the signatories' current addresses such that their
addresses and identities could be confirmed for purposes of the
Petition, Mr. Marchant responded that he and several other
plaintiffs--including Anna Burrell and Larry Moore--were
prepared to provide testimony, but the state court would not
accept it.  Mr. Marchant also stated that the state court did
not permit him to present a list of relevant voter registration

---

[9] The court's research reveals that pursuant to section 6-
136(2)(b) of the New York Election Law, a designating petition
for the office of District Attorney still requires 4,000 valid
signatures on a petition.

records, thereby precluding him from being heard.  Plaintiffs did not append a transcript from the state court proceeding to their papers or furnish it at the show cause hearing, although defendants provided excerpts at Exhibit B to their opposition memorandum.  (ECF No. 8-2, Defs. Opp'n Ex. B., Excerpt of State Court Proceeding Transcript.)

Plaintiffs also raised claims of racial discrimination for the first time during the hearing.  They argued that for the past few decades, candidates for the office of District Attorney of Queens County have been white males, and that the Board has power to prevent African-Americans such as Mr. Brown from running for the office of District Attorney because the Board determines who will be on the primary ballot.  Plaintiffs were requested to provide any evidence of intentional discrimination by the Board, such as evidence showing that the Board knew that the signatures it struck were by African-American voters. Plaintiffs conceded that they have no "smoking gun" or direct evidence of racial discrimination, but that the "circumstantial" evidence points to racial discrimination.

A discussion about *Hudson v. Bd. of Elections of the City of New York*, 616 N.Y.S.2d 62 (N.Y. App. Div. 1994), a case appended to plaintiffs' Reply to Defendants' Memorandum in Opposition to Plaintiffs' Application for a Preliminary Injunction (ECF No. 10, "Reply"), ensued.  (*See* Reply, Ex. A.)

In *Hudson*, the Appellate Division found that a voter was qualified to witness a petition even though his buff card did not reflect his change of residence because the voter had notified the Board of his change of address, and there was no evidence that the voter's registration had been cancelled.  616 N.Y.S.2d at 63.

In the instant case, plaintiffs did not submit evidence that they notified the Board of any change of address. Defendants averred that under the current statute, there are numerous ways for voters to apprise the Board of their changes in address (*e.g.*, submitting an online form; mailing an affidavit or specific form to the Board; or changing one's address through the United States Postal Service, which annually provides the Board with address changes), and plaintiffs failed to use any of the offered means to notify the Board of their address changes.  Defendants also contended that when Mr. Brown was notified about the Citizen-Objectors' Specifications of Objections, he had but did not avail himself of the opportunity to rehabilitate those signatures by offering evidence, including affidavits and testimony.  (*See also* Defs. Opp'n at 8.) Mr. Marchant stated that he had attempted to present such rehabilitative evidence at the Board's hearing, but the Board would not allow him to do so.  He further reiterated that he had unsuccessfully attempted to present such evidence during the

state court proceedings.  Neither the Board's hearing transcript
nor the complete state court transcript was submitted in the
record before the court.

Mr. Marchant objected to an assertion made in the
Richman Declaration, which states that a copy of a Clerk's
Report from the Board staff was served on plaintiffs more than
24 hours before the Commissioners of the Board convened to
consider the Report (Richman Decl. ¶ 7) at 1:15 p.m. on August
2, 2011.  Mr. Marchant argued that because he received the
Board's fax at 3:00 p.m. on August 1, 2011, as noted in Exhibit
A of the Richman Declaration, he received less than 24 hours of
notice.  Defendants maintained that the Board transmitted the
fax at 1:02 p.m. on August 1, 2011, also noted in Exhibit A of
the Richman Declaration.[10]  (*See also* Defs. Opp'n at 8 n.8.)

## DISCUSSION

Plaintiffs seek an injunction ordering the Board of
Elections to add Mr. Brown's name to the September 13, 2011
Democratic Primary ballot for the office of District Attorney of

---

[10] The court recognizes that the parties disagree as to the exact
time of the fax transmission.  The court reads the fax as having
been transmitted at 1:02 p.m., in satisfaction of the 24-hour
notice requirement.  Moreover, even if the fax was in fact
submitted at 3:00 p.m., the court notes that it is evident that
Mr. Brown and his representative Mr. Marchant received adequate
notice because the record indicates that they appeared at the
Board's hearing on August 2, 2011, which, according to the
parties, commenced at 1:15 p.m.

Queens County, New York.  The defendants contend that the Board complied with the New York Election Law and that the state Supreme Court upheld the propriety of the Board's actions and dismissed candidate Everly Brown's state court action.

## A.  Claim Preclusion[11]

---

[11] The court respectfully disagrees with defendants' assertion in its papers and at the show cause hearing, that the court lacks subject matter jurisdiction because plaintiffs are foreclosed from pursuing this action under the *Rooker-Feldman* doctrine, to the extent the plaintiffs are in privity with Mr. Brown.  (*See* Defs. Opp'n at 1.)  Defendants concede that the issue of privity cannot be determined on the current record.  (*See id*.)  Under the *Rooker-Feldman* doctrine, federal courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).  The *Rooker-Feldman* doctrine applies only to a very narrow subset of cases, and this case fails to lie within the following strictures, all of which must be satisfied, as articulated in *Hoblock*:  (1) "the federal-court plaintiff must have lost in state court"; (2) the plaintiff must "complain of injuries caused by a state-court judgment"; (3) the plaintiff must "invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Id*. (internal quotations omitted).  This case fails to meet the first requirement, since the state-court plaintiff, Mr. Brown, is different from the federal-court plaintiffs.  This case also fails to meet the second and third requirements, because plaintiffs' federal suit does not arise out of an injury "produced" by a state-court judgment; rather, the state court "simply ratified, acquiesced in, or left unpunished" the actions challenged by plaintiffs.  *Id*. at 88.  Nor can this court determine whether plaintiffs are inviting review and rejection of the state court judgment, because neither the issues presented to the state court nor the state court's decision appear in the record before this court.  Therefore, the court cannot find that plaintiffs' claims are barred by *Rooker-Feldman*.

Although defendants argue that plaintiffs are barred from bringing this suit under the doctrine of claim preclusion, the court finds that it lacks sufficient information to make that determination.  Plaintiffs' claims may be barred by claim preclusion "if they could have been raised in state court and they arise from the 'same transaction or series of transactions' as the state-court claims." *Hoblock*, 422 F.3d at 95 (quoting *Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir. 1997)).  Although plaintiffs' claims undeniably arise from the "same transaction or series of transactions" as Mr. Brown's state-court proceedings, it remains unclear whether the plaintiffs here were in sufficient privity with Mr. Brown such that their claims could have been raised in that state-court proceeding. *See Monahan v. New York City Dept. of Corrs.*, 214 F.3d 275, 285 (2d Cir. 2000) (claim preclusion applies only when the previous action "involved the plaintiffs or those in privity with them").  In *Hoblock*, a case in which political candidates unsuccessfully brought a suit in state court and sought further review in federal court, the Second Circuit held that under New York law, in order to find privity between parties, there must be "(1) identity of interest, and (2) sufficient control by the candidates over the voters that we should deem them to be in privity with each other."  422 F.3d at 96.  Such control exists when "the voters advance only those interests that they share

14

with the candidates" and "the voters and the candidates have so closely coordinated their litigation strategies that the voters are in effect the candidates' puppets." *Id.* As defendants concede (*see* Def. Opp'n at 1), the record contains insufficient factual information for the court to find such a degree of entwinement between the plaintiffs and Mr. Brown, and the court thus rejects defendants' claim preclusion defense.

## B.  Standard for Preliminary Injunction

In the Second Circuit, a party seeking an injunction must show irreparable harm to the movant, a likelihood of success on the merits, and a balance of hardships "tipping decidedly" in favor of the movant. *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011) (quoting *Monserrate v. New York State Senate*, 599 F.3d 148, 154 (2d Cir. 2010)). Where, as here, a party seeks an injunction against government action taken in the public interest pursuant to a statutory or regulatory scheme, or a party seeks a mandatory injunction that will alter the status quo or will provide the movant with substantially all the relief sought and such relief cannot be undone even if the defendant prevails at a trial on the merits, a heightened standard applies. *Hoblock*, 422 F.3d at 96–97; *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006). In such circumstances, the movant must make a "clear" or

"substantial" showing of a likelihood of success. *Hoblock*, 422
F.3d at 97.

The relief sought by plaintiffs undoubtedly will alter
the status quo by placing Mr. Brown on the September 13
Democratic Primary ballot, when the Board of Elections and the
state Supreme Court have invalidated his petition, rendering him
ineligible.  Furthermore, placing Mr. Brown on the ballot will
provide plaintiffs with "substantially all" the relief they
seek, and that relief cannot be undone if defendants prevail at
a trial on the merits.  The court thus considers whether
plaintiffs have shown irreparable harm absent an injunction;
whether they have made a clear or substantial showing of a
likelihood of success on the merits; and whether the balance of
hardships tips decidedly in their favor.

**1. Irreparable Harm**

The Supreme Court has long recognized that the right
to vote is a "fundamental political right, . . . preservative of
all rights." *Yick Wo v. Hopkins,* 118 U.S. 356, 370 (1886).
Plaintiffs submit that absent the requested mandatory
injunction, they will suffer irreparable harm because their
voting rights will be infringed, preventing them from voting for
the candidate of their choice, because the Board wrongfully
struck their signatures and denied them an opportunity to be
heard so their signatures may be restored.  The court agrees

16

that infringement on the right to vote necessarily causes
irreparable harm.  *See Williams v. Salerno*, 792 F.2d 323,
326 (2d Cir. 1986) (finding college students who were prevented
from registering to vote using their college addresses would
"certainly suffer irreparable harm if their right to vote were
impinged upon").

     The court does not find, however, that the fundamental
"right to vote" is the right at stake in this action, as
plaintiffs do not allege that they are being prevented from
accessing the polls or casting *any* vote for *any* candidate.
Rather, plaintiffs challenge the loss of their ability to vote
for the candidate of their choice, which--unlike the right to
vote--is not an absolute right.  In *Burdick v. Takushi*, 504 U.S.
428, 433 (1992), the Supreme Court recognized that the rights to
"vote in any manner" and "to associate for political purposes
through the ballot" are not absolute because regulation of
elections is necessary for the fair, honest, and orderly
administration of elections, and election laws "invariably
impose some burden upon individual voters."  Election laws--
including those that govern the eligibility of candidates—
"inevitably affect[] . . . the individual's right to vote . . .
to associate with others for political ends."  *Id*. (citing
*Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).  Thus, "the
State's important regulatory interests are generally sufficient

17

to justify reasonable, nondiscriminatory restrictions."
*Anderson*, 460 U.S. at 788 (footnote omitted).  Furthermore,
"limiting the choice of candidates to those who have complied
with state election law requirements is the prototypical example
of a regulation that, while it affects the right to vote, is
eminently reasonable." *Burdick*, 504 U.S. at 440 n. 10.  The
Second Circuit has also recognized that "[m]any restrictions,
such as signature requirements, not only do not burden voters'
constitutional rights to associate, but are, as a practical
matter, necessary to ensure the orderly functioning of
elections."  *Rivera-Powell v. New York City Bd. of
Elections*, 470 F.3d 458, 469 n. 15 (2d Cir. 2006) (citing
*Anderson*, 460 U.S. at 788).  Accordingly, the court finds that
plaintiffs have not shown irreparable harm, because their right
to vote for a specific candidate, even if impeded by election
laws governing signatures required for a candidate to appear on
the ballot, is not recognized as a constitutional injury.

## 2.  Likelihood of Success on the Merits

The court next considers whether plaintiffs have shown
a clear or substantial likelihood of success on the merits of
their Due Process and Equal Protection claims.

a.  *Due Process Claim*

As an initial matter, to the extent plaintiffs seek to
challenge the constitutionality of various provisions of the New

York Election Law, defendants correctly note that plaintiffs must file and serve notice on the Attorney General of the State of New York pursuant to Federal Rule of Civil Procedure 5.1.[12] (*See* Defs. Opp'n at 7.)  Plaintiffs clarified at the hearing, however, that they are not making a facial challenge to the New York Election Law or to the established procedures of the Board of Elections but, rather, claim that they were deprived of their constitutional right to vote without due process.

The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, "only against deprivations without due process of law." *Parratt v. Taylor,* 451 U.S. 527, 537 (1981) (internal quotation marks omitted), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327, 330-31 (1986). "[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Rivera-Powell*, 470 F.3d at 465 (quoting *Zinermon v. Burch,* 494 U.S. 113, 126 (1990)).  Where an alleged intentional deprivation is pursuant to an established state procedure, "the state . . . is in a position to provide a pre-deprivation hearing." *Id.* at 465

_____

[12] Although defendants note that plaintiffs must provide notice to the court of any claim of unconstitutionality (*see* Defs. Opp'n at 7), the current version of the Local Rules for the Eastern District of New York, effective July 1, 2011, do not include that requirement.

(citing *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)).  To determine the adequacy of due process afforded by the state's procedures, the court must weigh: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used" and "the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Rivera-Powell*, 470 F.3d at 466 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)).

The Second Circuit's ruling in *Rivera-Powell* governs the due process claim plaintiffs allege here.  In *Rivera-Powell*, a prospective judicial candidate and voters supporting her candidacy brought an action against the Board, alleging that the Board improperly removed the candidate from the primary ballot on the basis of a voter's written objection to her candidacy. 470 F.3d at 461.  The candidate sought reinstatement to the ballot in state court, advancing a series of claims similar to those in the instant case, including due process, freedom of association, racial discrimination, and voting rights claims. *Id*. The Second Circuit found that "because the state provided [candidate] Rivera-Powell with a pre-deprivation hearing and an

20

adequate judicial procedure by which to challenge any alleged illegalities in the Board's action, Rivera-Powell and her co-plaintiffs have failed to state violations of their procedural due process. . . rights." *Id*.

In the instant case, Mr. Brown has been afforded the very same pre-deprivation hearing from the Board and judicial review in state court that the Second Circuit reviewed and deemed adequate in *Rivera-Powell*, both with respect to the prospective candidate and the voters who supported his candidacy. Therefore, the court agrees with defendants that *Rivera-Powell* bars plaintiffs' due process claim here.

Even absent the *Rivera-Powell* holding, however, the court finds that plaintiffs have proffered insufficient evidence to support their due process claim. The record reflects that Messrs. Brown and Marchant (1) were given adequate notice of a pre-deprivation hearing from the Board, (2) appeared at the Board's pre-deprivation hearing, and (3) appeared at the state court proceeding brought by Mr. Brown in advancement of his claims. Defendants contend--and plaintiffs do not deny--that plaintiff Marchant was issued a copy of the Clerk's Report regarding the number of valid signatures on the Petition approximately 24 hours before the Commissioners of the Board convened to consider the Report on August 2, 2011. (*See also* Defs. Opp'n at 8.) The parties agree that Messrs. Brown and

Marchant were present at the Board's August 2, 2011 hearing, and that they were present at Mr. Brown's state court proceeding to validate the Petition. (*See also* Compl. ¶ 11.)  Although plaintiffs allege that these procedures did not satisfy their due process rights because they were not in fact given the opportunity to be *heard* at the hearings, they do not submit any transcripts of the Board hearing or the state court proceeding in support of that claim.  On the instant record the court cannot determine if plaintiffs' assertions are correct.

Moreover, although plaintiffs repeatedly alleged during the show cause hearing that they would have presented evidence to support the validity of their signatures and identities during the Board hearing and the state court proceeding had they been given the opportunity, no evidence reflects their supposed efforts.  Mr. Brown and plaintiff Marchant first had the opportunity to present sworn statements or testimony regarding the validity of their addresses at the August 2, 2011 Board hearing, and there is no evidence that they attempted to do so.  Their second opportunity to proffer evidence to rehabilitate their Petition signatures was at the state court proceeding.  Again, plaintiffs have not indicated that the state court record contains any such submission from plaintiffs.  Plaintiffs did not seize their third opportunity to present evidence, when they could have, but did not, append such

evidence to their papers in this action.  Finally, and most
recently, plaintiffs did not present evidence to rehabilitate
their signatures at the show cause hearing despite being given
the opportunity to do so.  In the absence of providing any
actual *evidence* of a due process infringement, the court finds
that plaintiffs have failed to demonstrate a substantial
likelihood of success on the merits of their due process claim.

b.  *Equal Protection Claim*

        To establish a constitutional violation under the
Equal Protection Clause, plaintiffs must show that a state actor
intentionally discriminated against them, "either by adopting
out of racial animus policies which are facially neutral but
have a racially discriminatory effect, or by applying a facially
neutral policy in a racially discriminatory manner." *See Rivera-*
*Powell*, 470 F.3d at 470 (citing *Hayden v. Cnty. of Nassau,* 180
F.3d 42, 48 (2d Cir. 1999), *overruled in part on other grounds*
*by Gonzaga Univ. v. Doe,* 536 U.S. 273 (2002)); *Powell v. Power*,
436 F.2d 84, 88 (2d Cir. 1970) (requiring a showing of
"intentional or purposeful discrimination" to make out an equal
protection claim in the election context).

        Plaintiffs do not allege any indicators of
"intentional or purposeful discrimination" by the Board in their
Complaint or Reply.  Moreover, during the show cause hearing,
plaintiffs offered nothing more than conclusory allegations that

their signatures were stricken from the Petition due to intentional discrimination.  Plaintiffs argued, for example, that the Board would have been able to discern that the signatures they struck belonged to African-Americans because the addresses are all in neighborhoods dominated by, or exclusively inhabited by, as plaintiffs' counsel suggested, African-Americans.  Plaintiffs also argued that for the past five decades, the Board has intentionally precluded all racial and gender minorities from candidacy for the office of District Attorney of Queens County, and the fact that only white males have been on the ballot for that office during "recent memory" is proof of such discrimination.  Plaintiffs eventually acknowledged, however, that they lack "smoking gun" evidence, and possess only circumstantial evidence.

The court finds that plaintiffs have shown far less than convincing circumstantial evidence that would meet the heightened "clear" and "substantial" showing of likelihood of success required here.  In fact, plaintiffs have proffered nothing beyond conclusory assertions that the court cannot accept as evidence.

Plaintiffs have not alleged--much less provided any evidence showing--that the Board acted "out of racial animus," or adopted facially neutral policies with a racially discriminatory effect.  Plaintiffs have not provided evidence

24

showing that the policies and practices regarding review of
voter signatures are applied in a discriminatory manner or that
racial minority populations suffer particular adverse impacts
from the law.  The facts as presented by both parties to the
court suggest that the law affects equally all registered voters
who move and do not change their address on record with the
Board, but wish to witness a petition for purposes of adding a
candidate to the ballot.  Neither party has suggested that this
policy has a racially discriminatory effect.  Nor have
plaintiffs shown that the Board has applied a facially neutral
policy in a racially discriminatory manner, as would be the case
if the Board knowingly declined to strike signatures that should
have been stricken due to mismatched addresses because the
signatures belonged to members of non-minority populations.
Accordingly, the court finds that plaintiffs have failed to show
any likelihood--much less a clear or substantial likelihood--of
success on the merits of their equal protection claim.

### 3.  Balance of Hardships

The court also finds that plaintiffs have failed to
establish that the balance of hardships tips decidedly in their
favor.  As discussed *supra*, plaintiffs' sole expected hardship
absent the injunction would be the inability to vote for the
particular candidate of their choice, a non-constitutional
injury.  In contrast, if a preliminary injunction is granted,

defendants' expected injury would be extraordinary.  Defendants
set forth in their Opposition extensive and detailed reasons
why, even if the court granted the requested injunctive relief,
the Board would be unable to comply due to the extraordinary
hardship compliance would require.  Currently, there is no
county-wide Democratic primary scheduled for Queens County, and
therefore, no preparations have been made for such a large-scale
voting event for over 650,000 eligible voters.  (Richman Decl.
¶¶ 13, 15.)  If the Board were ordered to add Mr. Brown's name
to a ballot, *inter alia*, (1) 6,000 additional poll workers would
have to be hired and trained; (2) over 350 additional ballot
scanners would need to be programmed by at least fifteen teams
of two technicians, working twelve hours a day, for nearly eight
days; (3) poll list books that include *all* enrolled Democrats
county-wide would need to be printed, at an as-yet-unknown cost
of time and financial resources; and (4) absentee ballots would
need to be printed and distributed by hand to permanent absentee
voters.  (Richman Decl. ¶¶ 15-22.)  In light of the tremendous
efforts and expenses necessary to coordinate a county-wide
election, the court need not reach the defendants' argument that
the doctrine of laches[13] should apply (*see* Defs. Opp'n at 17-19)

---

[13] Laches is an equitable doctrine which asks whether the
plaintiff in asserting its rights was guilty of "unreasonable
and unexcusable" delay that prejudiced defendants.  *Secs. Indus.*

because the plaintiffs' three-week delay in bringing suit was
unreasonable and inexcusable and tips the balance of hardships
in favor of the defendants.  While other courts have granted the
type of injunction plaintiffs request here as late as five days
before the pending election, those cases are distinguishable on
the facts.  *See, e.g.*, *Credico v. New York State Bd. of
Elections*, 751 F.Supp.2d 417, 423 (E.D.N.Y. 2010) (granting
preliminary injunction and directing the Board to place
candidate's name in "an empty space on a line that already
exists on the ballot" five days before scheduled election and
rejecting the Board's argument that it would be "extremely
difficult, if not impossible" to comply with the order because
of the Board's "failure to submit affidavits or offer sworn
testimony detailing the reasons why a change to the ballot is
not possible").

        Moreover, the court is not persuaded by cases
plaintiffs cite in their Reply to support their request for a
preliminary injunction, because those cases are also
distinguishable on the facts.  First, plaintiffs cite to
*Matheson v. New York City Bd. of Elections* (*see* Reply at 6[14]), in
which Judge Korman ordered the Board to add Mr. Brown to the

_____

*Ass'n v. Clark,* 885 F.2d 1034, 1041 (2d Cir. 1989), *cert.
denied,* 493 U.S. 1070 (1990).
[14] The Court refers to the page number assigned by the ECF filing
system, because the pages of the Reply were not numbered.

ballot "for the reason stated on the record."  (Docket 03-CV-4170, ECF No. 14, Order dated September 2, 2003.)[15]  In reviewing the *Matheson* docket, this court observed that Judge Korman stated that he found plaintiffs were "entitled to preliminary injunctive relief because of [the] likelihood that one such statute may be invalid."  (Docket 03-CV-4170, Minute Entry dated September 4, 2003).  Because the corresponding complaint in the *Matheson* case is missing several pages and transcripts from the show cause hearing, the court is unable to discern the basis for Judge Korman's issuance of the preliminary injunction in that case.

Second, in *Rockefeller v. Powers*, 78 F.3d 44 (2d Cir. 1996), the Second Circuit affirmed the district court's issuance of a preliminary injunction directing the Board to place on the Republican presidential primary ballot the names of certain delegates.  *Id*. at 45.  There, unlike here, the district court found that "burdensome and highly technical requirements" impeded candidates' "legitimate efforts" to be placed on the ballot.  *Id*. at 46.  The requirements deemed burdensome in *Rockefeller* included (1) collecting sufficient signatures for a petition within a 37-day window that included numerous holidays, inclement weather, school and family vacations, and short

---

[15] Because this case is not published, the docket number is cited for reference purposes.

periods of daylight; (2) a "host of rules" defining what constitutes a valid signature; and (3) "highly technical requirements" concerning the presentation of petitions to election officials. *Id*. at 45.  The instant case is distinguishable because plaintiffs' signatures would have been deemed valid if they had, in advance of signing the Petition, submitted evidence of their address change to the Board via any of several means, none of which are technical or particularly burdensome.

Similarly, *Kaloshi v. Hackshaw*, 02 CV 4762, 2002 WL 31051530 (E.D.N.Y. Sept. 6, 2002), is inapposite because the preliminary injunction was granted as to plaintiff-candidate Kaloshi based on the court's finding that the party-witness rule was facially unconstitutional. *Id*. at *9-13.  Notably, plaintiffs here likewise claim that the New York Election Law's party-witness rule is unconstitutional, but their claim is foreclosed by the subsequent Supreme Court decision, *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196 (2008), in which the Court held that political parties have the right to exclude non-members from participating in the selection of the party's standard bearer at the general election. *Id*. at 798. Therefore, *Kaloshi* is not persuasive here.

## CONCLUSION

Based on the foregoing, the court finds that plaintiffs have failed to demonstrate a clear or substantial likelihood of success on the merits of their due process, equal protection, and racial discrimination claims.  Accordingly, their motion for a preliminary injunction is denied.

The defendants' counsel is respectfully requested to serve a copy of this Memorandum and Order on all parties not represented on ECF and to file a declaration of service by September 2, 2011.

**SO ORDERED.**


_____/s/_____

KIYO A. MATSUMOTO
United States District Judge


Dated:  Brooklyn, New York
     September 2, 2011